UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERNESTO MONELL,<br><br>   Petitioner,<br><br>  v.<br><br>UNITED STATES,<br><br>   Respondent. | Criminal No.<br>12-10187-FDS |

**MEMORANDUM AND ORDER ON MOTION TO VACATE AND
CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

**SAYLOR, J.**

  This is a proceeding to vacate and correct a sentence pursuant to 28 U.S.C. § 2255. In 2014, Ernesto Monell was sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), to a term of imprisonment of 262 months. In 2015, the Supreme Court ruled that the "residual clause" of the ACCA was unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*").

  Monell has moved to vacate and correct his sentence. He contends that in light of *Johnson II,* he should not have been sentenced as an armed career criminal. For the reasons stated below, the motion will be granted.

**I. Background**

  On December 23, 2013, following a jury trial, Ernesto Monell was convicted of two charges: being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1) and possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

The pre-sentence report ("PSR") stated that Monell was subject to an enhanced sentence on the felon-in-possession charge under the ACCA. The PSR described six qualifying convictions, committed on four separate occasions, all in Massachusetts state courts:

1. On September 24, 1996, Monell was convicted of (a) possession of a Class B substance with intent to distribute and (b) possession with intent to distribute drugs in a school zone.

2. On February 11, 1997, he was convicted of (a) armed assault with intent to murder and (b) two counts of assault and battery with a dangerous weapon.

3. On December 8, 2004, he was convicted of assault and battery on a correctional officer.[1]

4. On July 20, 2009, he was convicted of assault and battery with a dangerous weapon.

(PSR at 12–16).

The PSR provided a brief factual description of each predicate offense, to which Monell did not object. (Docket No. 235). Monell also did not object to the finding that he qualified as an armed career criminal.

On June 3, 2014, Monell was sentenced. His counsel requested the imposition of the mandatory minimum sentence under the ACCA of fifteen years' imprisonment. (Docket No. 232). The Court concluded that Monell qualified as an armed career criminal, and that he was subject to the enhanced penalties of the ACCA. He was then sentenced to a term of

---

[1] Monell was convicted under Mass. Gen. Laws ch. 265, § 13D, which makes it a crime to commit an assault and battery upon a public employee engaged in the performance of his or her duties. Although the case law refers variously to the Massachusetts crimes of "assault and battery on a correctional officer" (ABCO), "assault and battery on a police officer" (ABPO), and "assault and battery on a public employee" (ABPE), they are in fact the same offense.

imprisonment of 262 months on the felon-in-possession count and 240 months on the drug count, to be served concurrently. (Docket No. 237).

Monell appealed both his conviction and sentence. His challenge to the sentence was that the court had made a clearly erroneous factual finding as to whether he had attempted to obstruct justice. *United States v. Monell*, 801 F.3d 34, 51 (1st Cir. 2015). He did not appeal the court's finding under the ACCA, and did not challenge the constitutionality of the statute. *Id.*. On September 2, 2015, the First Circuit affirmed the conviction and sentence. *Id.* He petitioned for a writ of certiorari, which was denied on January 11, 2016. *Monell v. United States*, 136 S. Ct. 864 (2016).

In the meantime, on June 26, 2015, the United States Supreme Court issued its opinion in *Johnson II*, holding that the residual clause of the ACCA was unconstitutional. 135 S. Ct. 2551, 2563 (2015). In April 2016, after Monell's petition for a writ of certiorari was denied, the Supreme Court held that *Johnson II* had retroactive effect on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

On May 3, 2016, the Court appointed counsel to consider a possible a claim for collateral relief pursuant to *Johnson II*. On May 10, 2016, shortly after he had been appointed counsel, Monell filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging a claim for ineffective assistance of counsel. On May 31, 2016, he filed an additional *pro se* motion to amend the petition. On June 24, 2016, he moved, through counsel, to "amend and supplement" his petition to allege new claims under *Johnson II*.[2]

---

[2] The motion filed by counsel states that it "amend[s] and supplements" the prior *pro se* motion. Because the earlier motions were filed *pro se* at a time when Monell had counsel, the Court will disregard them, and address only the motion filed by counsel.

**II. <u>Analysis</u>**

The amended petition alleges that Monell should not have been sentenced as an armed career criminal in light of *Johnson II*. Accordingly, he has moved that the court vacate and correct his sentence. The government contends that the petition should be denied because Monell has procedurally defaulted his claim or, in the alternative, because his predicate offenses qualify under the "force clause" of the ACCA.

**A. <u>Whether Monell Has Procedurally Defaulted</u>**

Collateral relief in a § 2255 proceeding is unavailable if a petitioner has procedurally defaulted on his claim by failing to raise it at trial or on direct appeal. *Berthoff v. United States,* 308 F.3d 124, 127–28 (1st Cir. 2002) (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)). A petitioner can avoid that bar if he can show both "(1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982); *see also Murray v. Carrier*, 477 U.S. 478, 493–94 (1986). In an "extraordinary case," a petitioner who cannot show cause and prejudice for a procedural default may nevertheless be excused upon a showing that he is "actually innocent." *Murray,* 477 U.S. at 496. In this context, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623.

Monell did not argue, either at the time of sentencing or in his appeal, that the ACCA was unconstitutionally vague or that he did not qualify as an armed career criminal. He has therefore procedurally defaulted as to that claim. However, he contends that he has shown both cause and prejudice to excuse his default.

**1. <u>Cause</u>**

To show cause, a petitioner must demonstrate that "some objective factor external to the

4

defense" prevented him from raising a constitutional claim on direct appeal. *Murray,* 477 U.S. at 488. The Supreme Court has held that a finding of cause is warranted where the petitioner shows that, at the time of the direct appeal, "the factual or legal basis for a claim was not reasonably available to counsel." *Id.* (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984)). To show that there was no legal basis for the defaulted claim at the time of the direct appeal, it is not sufficient for a petitioner to show that the claim likely would have been futile based on then-existing precedent. *See Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982). Rather, a petitioner seeking relief based on a change in the law must show that the "constitutional claim is so novel that its legal basis [was] not reasonably available to counsel." *Reed*, 468 U.S. at 16. A claim is sufficiently novel to warrant a finding of cause if it is based on a Supreme Court opinion that (1) "explicitly overrule[s]" prior Supreme Court precedent; (2) overturns "a longstanding and widespread practice to which [the Supreme Court] ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved;" or (3) "disapprove[s] a practice [the Supreme Court] arguably ha[d] sanctioned in prior cases." *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 558 (1982)).

Monell contends that he can demonstrate cause based on the first prong of the *Reed* test. In April 2007, the Supreme Court decided *James v. United States*, upholding an offender's sentence under the residual clause of the ACCA. 550 U.S. 192, 214 (2007) *overruled by Johnson II*, 135 S. Ct. 2551 (2015). Justice Scalia dissented from the court's opinion, suggesting that the residual clause was void for vagueness. *Id.* at 216–17. The majority explicitly rejected that contention, stating, "we are not persuaded . . . that the residual provision is unconstitutionally vague." *Id.* at 210 n.6. That holding was reaffirmed four years later in *Sykes*, with Justice Scalia again in dissent. *See Sykes v. United States*, 564 U.S. 1, 16, 28 (2011)

*overruled by Johnson II*, 135 S. Ct. 2551 (2015). In June 2015, the Supreme Court decided *Johnson II*, this time with Justice Scalia writing for the majority, holding that the residual clause was unconstitutionally vague and that the court's "contrary holdings in *James* and *Sykes* are overruled." *Johnson II*, 135 S. Ct. at 2563.

It is certainly true that *James* and *Sykes* were controlling Supreme Court precedent at the time of Monell's sentencing. Nonetheless, there is substantial doubt as to whether the claim of unconstitutionality was not a legal argument reasonably available to counsel. Monell's brief in the First Circuit was filed in January 2015. At the time, the Supreme Court had heard argument in, but had not yet decided, *Johnson II*. *See Johnson II*, 135 S. Ct. at 2551.[3] The government's brief in opposition was filed on May 29; *Johnson II* was decided on June 26; and Monell's reply brief was filed on June 30, four days later. Under the circumstances, the result in *Johnson II* was hardly unforeseeable in January 2015, and Monell could have easily included such a challenge in his appellate briefs.

Nonetheless, and although it is a close question, it appears that Monell's claim satisfies the *Reed* test. As noted, *James* and *Sykes* had not been overruled, much less "explicitly overruled," at the time Monell filed his appeal. And while it was unlikely that the Supreme Court would have granted certiorari in *Johnson II* simply to reaffirm those holdings, that was not a certainty. Furthermore, although *Johnson II* was decided four days before Monell filed his reply brief, counsel's failure to raise the issue in that pleading is hardly surprising, because the usual rule is that new arguments cannot be advanced for the first time in a reply brief. *See United States v. Matos*, 611 F.3d 31, 38 (1st Cir. 2010).

Under the circumstances, the Court finds that Monell has demonstrated sufficient cause

---

[3] *Johnson II*, was actually argued twice, once on November 5, 2014, and again on April 26, 2015. *Id.*

6

for his procedural default under the first prong of *Reed*. 468 U.S. at 17.

### 2. **Prejudice**

To be excused from a procedural default, a habeas petitioner must also show "actual prejudice." *See United States v. Frady*, 456 U.S. at 167. To demonstrate actual prejudice, the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Id.* at 170.

Here, the prejudice argument merges with the argument on the merits. If Monell shows that he would not qualify as an armed career criminal after *Johnson II*, his failure to raise that claim obviously resulted in prejudice. Therefore, the Court will proceed to the merits to determine whether he qualifies as an armed career criminal.

### B. **Whether Monell Qualifies as an Armed Career Criminal**

#### 1. **Armed Career Criminal Act**

Federal law makes it a crime for a convicted felon to possess a firearm. *See* 18 U.S.C. § 922(g)(1). That statute generally carries a maximum penalty of a term of imprisonment of ten years. *See id.* § 924(a)(2). However, under the ACCA, a defendant is subject to a much longer prison term if he has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* § 924(e). Qualifying defendants are subject to a mandatory minimum term of imprisonment of fifteen years. *See id*.

At the time of Monell's sentencing, a "violent felony" was defined as a conviction that carried a maximum term of imprisonment exceeding one year, and that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, [or] involves use of explosives"; or (3) "otherwise . . . presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B); *see also*

7

*Johnson II*, 135 S. Ct. at 2555–56. Those provisions are commonly referred to as the "force clause," the "enumerated offenses clause," and the "residual clause," respectively.

In *Johnson II*, the Supreme Court held that the residual clause was unconstitutionally vague. *Johnson II*, 135 S. Ct. at 2563. The following year, in *Welch*, the court found that *Johnson II* applied retroactively on collateral appeal. *Welch*, 136 S. Ct. at 1268. Accordingly, a prisoner sentenced prior to *Johnson II* as an armed career criminal with offenses qualifying as predicates under the residual clause may now challenge that sentence in a habeas petition.

To be lawful, such a petitioner's enhanced sentence must be based on predicate offenses that qualify as "violent felonies" under either the enumerated offenses clause or force clause of 18 U.S.C. § 924(e)(2)(B). Under the force clause, the term physical force means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*") (emphasis in original).

The question is not whether Monell actually committed multiple violent crimes—he did.[4] Rather, the question is whether, as a legal matter, the offenses for which he was convicted qualify as "violent" felonies under the strict requirements of the ACCA. His actual conduct "is of no relevance" under that inquiry. *United States v. Serrano-Mercado*, 784 F.3d 838, 843 (2015).

---

[4] According to the relevant paragraphs of the PSR, to which Monell did not object, his three sets of convictions for violent offenses involved the following conduct:

1. in August 1995, he fired twelve shots at a group of men, wounding one;

2. in April 2001, he repeatedly punched a correctional officer, causing serious head and facial injuries, including a broken bone, a laceration, multiple contusions, and a concussion; and

3. in May 2008, he assaulted and beat a fellow prisoner with a sharpened toothbrush.

(PSR ¶¶ 55-57).

8

## 2. Standard of Review

A court must undertake a three-step process to determine whether a predicate offense, as the law defined it at the time of the conviction, qualifies as "violent" under the ACCA. *See United States v. Faust*, 853 F.3d 39, 51–52 (1st Cir. 2017) (citing *McNeill v. United States*, 563 U.S. 816, 820 (2011)).

At step one, the court must take a "categorical" approach to determine whether the offense of conviction encompasses non-violent forms of committing the crime. Under *Taylor v. United States*, courts are directed to look at the offense in the abstract, considering the elements of the crime, rather than the particular defendant's underlying conduct. 495 U.S. 575, 602 (1990). Under that approach, "the first question a sentencing court must answer . . . is whether all of the conduct covered by the statute categorically requires violent force." *Faust,* 853 F.3d at 51. If so, "then a conviction under the statute will always count as a predicate under the ACCA." *Id.* If not, then the statute is overbroad and the court proceeds to step two. *Id.*

At step two, the court must determine whether the offense is "divisible." *Id.* An offense may set out only a single set of elements to define a single crime—constituting an "indivisible" offense—or it may "list elements in the alternative, there defin[ing] multiple crimes"— constituting a "divisible" offense. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). An offense is divisible if it provides multiple *elementally* distinct forms of commission, but not if it merely "enumerates various *factual means* of committing a single element." *Id.*; *see also United States v. Fish*, 758 F.3d 1, 5 (1st Cir. 2014). In determining whether an alternative form of commission presents different elements or means, the touchstone inquiry is whether the elements must be proved beyond a reasonable doubt to a jury. *Mathis*, 136 S. Ct. at 2257; *see also United States v. Tavares*, 843 F.3d 1, 15 (1st Cir. 2016), *reh'g denied*, 849 F.3d 529 (1st Cir. 2017). If

an offense of conviction encompasses at least one non-violent form of commission and is indivisible, it cannot serve as an ACCA predicate under the force clause. If it is divisible, the court proceeds to step three.

At step three, the court must look to a limited class of documents approved under *Shepard v. United States,* 544 U.S. 13 (2005), to determine "what crime, with what elements, a defendant was convicted of." *Mathis,* 136 S. Ct. at 2249. So-called *Shepard* documents include "the statutory definition, charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. Again, the court undertakes that inquiry not to determine the actual conduct in which the petitioner engaged, "as such conduct is of no relevance." *United States v. Serrano-Mercado*, 784 F.3d 838, 843 (2015). Instead, it does so to "identify (if such identification is possible) the actual offense of conviction from among the distinct offenses set forth in a divisible statute." *Id*.

There is no First Circuit precedent as to who bears the burden to produce *Shepard* documents on collateral review. *Cf. Faust,* 853 F.3d at 60 (finding on direct appeal that if "it is unclear" which form of a divisible predicate offense the petitioner committed, that conviction "cannot be used as a predicate under the ACCA"); *see also Tavares*, 843 F.3d at 20 (remanding after direct appeal to "allow the government the opportunity to put forth *Shepard* documents" in order to determine whether defendant's conviction was for the violent form of a divisible offense). In many cases, no such documents exist, and therefore the question of who bears the burden of proof will effectively determine the result.

Generally, a habeas petitioner bears the burden to prove that his sentence "was imposed in violation of the Constitution or laws of the United States." *Wilder v. United States*, 806 F.3d

10

653, 658 (1st Cir. 2015) (quoting 28 U.S.C. § 2255(a)). That principle is in some tension with the rule that at sentencing and on appeal the government bears the burden of establishing that "a prior conviction qualifies as a predicate offense for sentencing enhancement purposes." *United States v. Davila-Felix*, 667 F.3d 47, 55 (1st Cir. 2011). The Seventh Circuit has resolved the issue by holding that the government retains the burden to produce *Shepard* documents on collateral review. *Kirkland v. United States,* 687 F.3d 878, 889 (7th Cir. 2012). Perhaps a better way to reconcile the conflict is to arrive at the same result through a different avenue: to conclude that the petitioner bears the burden to establish that his prior conviction is presumptively unlawful at steps one and two, and, upon such a showing, the burden shifts to the government to produce *Shepard* documents at step three. Applying that framework, if the government fails to produce *Shepard* documents that "ma[ke] plain" which form of a divisible offense a petitioner was convicted of, that offense "cannot be used as a predicate under the ACCA." *Faust,* 853 F.3d at 60.

Here, Monell contends that his convictions for "violent felonies" do not qualify as predicate offenses under either the force clause or the enumerated offenses clause. Again, he was found to have six predicate convictions, committed on four separate occasions. If he demonstrates that the offenses committed on at least two of those occasions were not "violent felonies," the ACCA does not apply.

### 3. The 2004 Conviction for Assault and Battery on a Public Employee

#### a. Categorical Approach and Divisibility

On December 8, 2004, Monell was convicted of assault and battery on a correctional officer in violation of Mass. Gen. Laws. ch. 265, § 13D. Section 13D makes it a crime to "commit[] an assault and battery upon any public employee when such person is engaged in the

11

performance of his duties at the time of such assault and battery," and is commonly referred to as an APBE. That offense encompasses the common-law variants of assault and battery. *See Faust*, 853 F.3d at 55. Under Massachusetts law, assault and battery can be committed either intentionally or recklessly, with the intentional form further susceptible of division into "harmful" and "offensive" variants. *Id.*

A recent decision by the First Circuit has addressed whether the Massachusetts crime of ABPE constitutes a violent felony under the force clause of the ACCA. *See id.* at 55–56. In *Faust*, the court determined that ABPE was overbroad because a merely offensive touching could qualify as an ABPE. *Id.* at 55. It found that—at least for offenses committed after the SJC decision in *Commonwealth v. Santos*, 440 Mass. 281 (2003), and prior to the Massachusetts appellate court decision in *Commonwealth v. Mistretta*, 84 Mass. App. Ct. 906 (2013)—the offense of ABPE was divisible into its intentional and reckless forms. *Id.* at 57–58. It further found that the intentional form was not divisible into its harmful and offensive variants. *Id.* at 58.[5]

Here, Monell was convicted on the ABPE charge in December 2004, during the period between the *Santos* and *Mistretta* decisions. Because his ABPE conviction occurred during the period in which (according to the *Faust* court) ABPE was a divisible offense, the offense of conviction is divisible into intentional and reckless forms and is subject to the modified categorical approach.

### b. Modified Categorical Approach

At step three, the court is required to examine *Shepard*-approved documents to determine whether Monell was convicted of the intentional (non-violent) or reckless form of ABPE. Under

---

[5] The court was silent as to whether that analysis applied to offenses committed outside of the time period between the *Santos* and *Mistretta* decisions. *See Faust,* 853 F.3d at 58.

*Faust*, the First Circuit left open the question of whether the reckless form of assault and battery constituted a violent felony under the ACCA. 853 F.3d at 60. It remanded the case to the district court with the direction that "if it is unclear which form of ABP[E] [the defendant] ple[aded] guilty to, then his ABP[E] conviction cannot be used as a predicate under the ACCA because the court's step three inquiry utilizing *Shepard* documents will not have made plain what the offense of conviction actually was." *Id.*[6] Here, too, if the *Shepard* documents do not speak clearly, defendant's ABPE conviction cannot qualify as a predicate offense.

The only evidence in the record as to the nature of the ABPE conviction is the factual description in the PSR. Monell did not object to those portions of the PSR at sentencing. The government contends that those unobjected-to factual descriptions constitute admissions that are appropriately reviewed under *Shepard*. There is some support for that position in *Serrano-Mercado*. In *Serrano-Mercado,* the First Circuit held, in the context of a direct appeal, that it was not plain error for the district court to find that the defendant's prior convictions for divisible offenses qualified as "crimes of violence" under the Sentencing Guidelines, where the defendant failed to challenge their characterization as such. *Serrano-Mercado*, 784 F.3d at 848–49. *But see*, *id.* at 858 ((Lipez, J., concurring) (finding that although "[c]ourts may accept the PSR's representation of the existence of a prior conviction in the absence of objection," they "are not permitted to rely on the PSR to establish the character of a conviction under a divisible statute" because doing so "would conflict with the Supreme Court's directive that the particular offense committed in violation of a divisible statute be determined through examination of *Shepard*-approved documents"). The *Serrano-Mercado* court was careful to state that a different holding

---

[6] Although it has caused some confusion among courts, that statement does not conclusively establish that the government bears the burden of producing *Shepard*-approved documents to verify the offense of conviction in the present case. *Faust* involved a defendant's direct appeal of his sentence enhancement under the ACCA; here, Monell challenges his sentence by a § 2255 petition for a writ of habeas corpus.

13

may be warranted in a case where an appellant did not object to a description of predicate offenses, if binding precedent at the time of sentencing held that the offenses categorically qualified as predicates. *Id.* at 849. In light of that limitation, the Court has considerable misgivings about relying on unobjected-to portions of the PSR, because Monell's predicate convictions qualified as "violent" under the now-unconstitutional residual clause of the ACCA at the time of his sentencing.

In any event, even if the Court were to rely on the PSR, that document does not clearly demonstrate that Monell was convicted of the reckless form of ABPE. The PSR states:

> A report prepared by staff at MCI Cedar Junction reveals that on December 15, 2001, the defendant assaulted a correctional officer at the facility. The defendant repeatedly punched the correctional officer with closed fists causing serious head and facial injuries. The correctional officer sustained a fractured left orbital, a laceration above the left eye, multiple contusions about the head and neck, and a concussion. These injuries caused the correctional officer to miss four months of work.

Again, the question is a narrow and technical one: whether that description contains any explicit statement concerning Monell's *mens rea* at the time of the offense, and in particular whether it was intentional or reckless. Its failure to "speak plainly" to his *mens rea*—which principally distinguishes the two forms of ABPE—does not allow the Court to "satisfy *Taylor's* demand for certainty" in determining which form of the offense was committed. *Faust,* 853 F.3d at 52 (quotations omitted).

Although Monell's conduct was obviously violent in the colloquial sense, the issue is not the factual nature of the underlying conduct, but instead the question of "what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. Because no *Shepard*-approved document clearly demonstrates that Monell was convicted of the reckless form of ABPE, his ABPE conviction cannot serve as a predicate offense under the ACCA.

### 4. The 2009 Conviction for Assault and Battery with a Deadly Weapon

#### a. Divisibility

On July 20, 2009, Monell was convicted of assault and battery with a deadly weapon. Mass. Gen. Laws ch. 265 § 15A(b) provides for a maximum term of imprisonment for "whoever commits an assault and battery upon another by means of a dangerous weapon." The substantive definition of assault and battery is supplied by the common law. *See Tavares*, 843 F.3d at 12.

The First Circuit has recently spoken on the question of whether a Massachusetts ABDW conviction qualifies as a violent felony post-*Johnson II*. *See id.* at 18.[7] In *Tavares,* the court described Massachusetts ABDW as having "two separate aspects." *Id.* at 12 (quoting *Burno*, 396 Mass. at 625). Those aspects are:

(1) the intentional and unjustified use of force upon the person of another, however slight," or

(2) the intentional commission of a wanton or reckless act causing physical or bodily injury to another.

*Id.* (quoting *Burno*, 396 Mass. at 625) (alterations omitted). It determined that "[t]he differences in the two forms of Massachusetts ABDW—intentional versus reckless *mens rea*, slight touching versus bodily injury—are substantively distinct and therefore constitute alternative elements, rather than different factual means of establishing a single set of elements" and concluded that the crime is therefore divisible. *Id.* at 17–18. The court further found that the intentional version of ABDW qualifies as violent under the force clause of the ACCA, but left open the question of whether the reckless form constitutes a violent felony. *Id.* at 13, 18–20. Therefore, Monell's

---

[7] The Supreme Court has recently found that the residual clause of the United States Sentencing Guidelines—which contains the same language found to be unconstitutional vague in *Johnson II*—is not void for vagueness. *Beckles v. United States*, 137 S. Ct. 886, 897 (2017). The reasoning of that opinion does not undermine the application of precedent interpreting the force clause in the Sentencing Guidelines context to the ACCA context.

ABDW conviction is a divisible offense, subject to the modified categorical approach.

### b. Modified Categorical Approach

At step three, the question is whether Monell committed the intentional or reckless form of ABDW. Applying the modified categorical approach to his ABDW conviction, the Court is presented again with only the unobjected-to material contained in the PSR. Even if that document is susceptible of consideration at this stage, it is insufficiently conclusive to determine the form of the ABDW Monell that led to the conviction.

The PSR describes Monell's 2008 conviction for ABDW as follows:

> A criminal complaint alleges that on May 30, 2008, the defendant assaulted and beat Eyalya Moody with a sharpened toothbrush while incarcerated at Souza-Baranowski Correctional Center in Lancaster, MA.[8]

The generic charging language that he "assaulted and beat" the victim is as consistent with reckless ABDW as it is with intentional ABDW, and is therefore insufficient to identify which form Monell was convicted of. *See Faust,* 853 F.3d at *14 ("Facts that are as consistent with intentional ABPO as they are with reckless ABPO can hardly be said to 'speak plainly.'"). However, unlike ABPE, the First Circuit has determined that the intentional form of ABDW qualifies as a predicate offense under the force clause of the ACCA. *Id.* at 13. Therefore, Monell's conviction for ABDW may only qualify as a violent offense if the reckless form of ABDW likewise qualifies.

### c. Reckless ABDW

*Tavares* left open the question of whether reckless ABDW constituted a violent offense under the ACCA. Shortly prior to the issuance of that opinion, this Court concluded that reckless

---

[8] Monell was convicted of ABDW twice, in 2008 and in 1996. However, because the Court has already determined that his 2003 ABPE conviction no longer qualifies as a predicate offense—thereby eliminating one occasion on which a predicate offense was committed—if his 2008 ABDW offense is similarly no longer a predicate, Monell cannot be classified as an armed career criminal.

16

ABDW did not qualify as a predicate offense under the force clause under controlling First Circuit precedent in *United States v. Fish*, 758 F.3d 1, 10–14 (1st Cir. 2014). *United States v. Ford*, No. 05-cr-10326-FDS (D. Mass. Nov. 16, 2016), ECF No. 114. The fact that *Tavares* left this question open has not given the Court any reason to reconsider its prior holding that reckless ABDW does not constitute a crime of violence.[9] Accordingly, the Court cannot conclude that Monell's ABDW conviction qualifies as a predicate offense.

### C. Whether Monell Should Be Resentenced

With the elimination of his 2003 ABPE conviction and 2008 ABDW conviction, Monell has, at most, four qualifying offenses, committed on two separate occasions. That record is insufficient to qualify him as an armed career criminal under the ACCA.

Because the ACCA no longer applies, Monell's sentence of 262 months on the felon-in-possession count thus exceeds the statutory maximum, which is 120 months. Although his concurrent sentence of 240 months on the drug count is unaffected, it nonetheless appears that a resentencing is required. The Court will set a timetable for the filing of an updated PSR and supplemental sentencing memoranda, and a new sentencing hearing.

## III. Conclusion

For the foregoing reasons, Monell's motion to vacate and correct sentence is GRANTED. The clerk will set the case for re-sentencing.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 5, 2017        United States District Judge

---

[9] At least four other judges in this district have held that reckless ABDW does not constitute a crime of violence, while two have held that it does. *See United States v. Lattanzio*, 2017 WL 519241, at *4 (D. Mass. Feb. 8, 2017).

17